# COURT OF APPEALS OF VIRGINIA

Present: Judges Friedman, Chaney and Raphael
Argued by videoconference

WILLIAM JOSEPH PETRAK

v.      Record No. 0110-24-4

RYAN SAWYERS

MEMORANDUM OPINION[*] BY
JUDGE VERNIDA R. CHANEY
OCTOBER 21, 2025

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Tracy C. Hudson, Judge[1]

Lee E. Berlik (R. Jackson Martin; BerlikLaw, LLC, on briefs), for
appellant.

Evan D. Mayo (Daniel R.O. Long; Tremblay & Smith, PLLC, on
brief), for appellee.

The First Amendment to the United States Constitution protects opinions based on fully

disclosed facts from defamation actions. In a Facebook post, William Petrak repeatedly labeled

Ryan Sawyers, then-Chairman of the Prince William County School Board, a "SEXUAL

PREDATOR/HARASSER." He included a comment Sawyers made about a librarian, a

screenshot of Sawyers thanking Senator Al Franken on Twitter, and a photograph of Franken

engaged in inappropriate conduct. A jury found Petrak liable for defamation. Petrak argues that

the trial court erred in overruling his demurrer and plea in bar, contending that the statute of

limitations bars the claim, his comments were non-actionable expressions of opinion, and

immunity applies under Virginia's anti-SLAPP statute.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Honorable Carroll A. Weimer, Jr., denied Petrak's demurrer and plea in bar
asserting the statute of limitations. The Honorable Tracy C. Hudson presided over Petrak's trial
and denied his post-trial plea in bar asserting immunity under Virginia's anti-SLAPP statute.

Upon review, we hold that Petrak's comments constitute non-actionable opinions based on fully disclosed facts. The trial court thus erred in overruling the demurrer and plea in bar. Based on these errors, we reverse and remand for the trial court to consider whether to award attorney fees under Virginia's Anti-SLAPP statute.

BACKGROUND[2]

In December 2017, Petrak, who led the "Prince William Committee (PWC) for Quality Education" and had previously pursued recall efforts to oust Sawyers from his Chairman position, publicly responded to a prior 2014 comment made by Sawyers on Facebook. Sawyers had commented on a local librarian's public photograph, referring to her as "[s]uch a LILF."[3] In response, Petrak posted in the public Facebook group, "PWC Education Reform," sharing a series of statements calling Sawyers a "SEXUAL PREDATOR/HARASSER." These statements were accompanied by screenshots of Sawyers's LILF comment, a tweet in which Sawyers thanked Senator Al Franken, and a photograph of Franken engaging in inappropriate conduct.

Petrak's comment reads as follows:

> Since our School Board Chairman-at-Large continues to paint false pictures of people with social media, I thought I would share some real disturbing (and truthful) pictures about Ryan Sawyers.
>
> The first picture is of a wom[a]n who posted a professional picture of herself on Facebook. As you can see, her friends made nice comments about the picture. Look closely and see the comment by Ryan Sawyers. It says, "such a LILF[.]" I am told this person is a librarian. So basically, Ryan Sawyers, a married man, is publicly saying on social media that he would like to have sex with this

---

[2] "When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Payne v. Payne*, 77 Va. App. 570, 579 n.1 (2023) (quoting *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021)).

[3] Sawyers did not dispute that he called the librarian "such a LILF." Petrak maintains the acronym referred to a distasteful innuendo. However, Sawyers testified that LILF meant "Librarian I'd Like to Fund."

woman.  If that isn't the behavior of a SEXUAL PREDATOR or
HARASSER, I don't know what is.

The second picture is a tweet from Ryan Sawyers thanking Senator
Al Franken, another SEXUAL PREDATOR for campaigning in
Virginia.

The third picture is of Al Franken groping a sleeping woman on a
military transport plane.

Can you see the connection here?  So our School Board Chairman-
at-Large, Ryan Sawyers is an open serving SEXUAL
PREDATOR/HARASSER.  Do you see any problem with this?

Instead of attacking people with false narratives on social media,
he should be removing himself from public office and you should
be demanding it.

So to recap, we have a SEXUAL PREDATOR/HARASSER
chairing our school board.

Let's see if anyone is willing to defend this SEXUAL
PREDATOR/HARASSER.  I'm sure Mr. Sawyers and his minions
will try to turn this around and make this about me . . . it's how
they roll.

Four days after the post, Sawyers sued Petrak for defamation and civil conspiracy,
alleging that the "post was part of a larger plan by Petrak and others to defame [him] or to cause
[his] political downfall . . . through defamation."[4]

In March 2021, Sawyers refiled his defamation claim against Petrak but dropped the
conspiracy claim.  Petrak demurred, contending that the statements were constitutionally
protected expressions of opinion.  Following the demurrer hearing, the court held that whether
the statements were opinion or fact was a question for the jury and overruled the demurrer
"without prejudice to raise the issues of opinion at [t]rial."  It also held in abeyance Petrak's plea
in bar asserting statutory immunity.

_____

[4] In an amended complaint, Sawyers sued another member of the Board for conspiracy
alleging that he helped Petrak draft the Facebook post.

- 3 -

During the October 2023 trial, Petrak renewed his argument that his statements were protected opinions. The trial court responded:

> Understood. I believe it's clearly, though, a question of law for [t]he [c]ourt as to whether the statements are matters of opinion or whether they are statements of fact, and I have ruled they are statements of fact.
>
> They are -- I mean, to put it simply: [t]hey are capable of being proven demonstrably true or false, and I think that's the simplest distinction between fact and opinion.

Petrak then moved to strike and for a directed verdict, claiming statutory immunity under Code § 8.01-223.2. The trial court denied these motions.

The jury returned a verdict finding Petrak liable for defamation and acting with "actual malice,"[5] and awarded Sawyers $1,000,000 in damages. Following the verdict, the court overruled Petrak's demurrer, finding the defamatory statements to be either actionable opinion, defamation by implication, or otherwise actionable.[6] It also denied Petrak's plea in bar, holding that immunity did not apply because of the jury finding of actual malice. Petrak timely appealed.

ANALYSIS

Petrak raises three errors made by the trial court. He first challenges the timeliness of Sawyers's refiled claim, contending that the statute of limitations bars the claim. We assume

---

[5] Under First Amendment jurisprudence, "actual malice" is defined as "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *see also Actual Malice (2)*, *Black's Law Dictionary* (11th ed. 2019) (defining "actual malice" as "[k]nowledge (by the person who utters or publishes a defamatory statement) that a statement is false, or reckless disregard about whether the statement is true").

[6] The trial court, without specifically characterizing some statements as facts and others as opinions, determined that Petrak's demurrer should be overruled regardless, because in any of the three listed scenarios, his statements constituted defamation.

without deciding that Sawyers timely filed his renewed action.[7] Petrak further argues the trial court erred in overruling his demurrer because his Facebook comments constituted non-actionable "opinions that fully disclose their factual predicate and do not imply the existence of undisclosed defamatory facts." He lastly asserts that the trial court erred in "fail[ing] to dismiss the case on grounds of statutory immunity and [in denying an] award of attorney fees under Va. Code § 8.01-223.2." For the reasons below, we agree that the trial court erred in overruling Petrak's demurrer and denying him statutory immunity.

## I. Standard of Review

An appellate court reviews a trial court's decision to overrule a demurrer de novo. *Marlowe v. Sw. Va. Reg. Jail Auth.*, 81 Va. App. 415, 423 (2024); *see also Taylor v. Aids-Hilfe Koln, e.V.*, 301 Va. 352, 357 (2022). When reviewing such a judgment, we "accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018); *see*

---

[7] In "cases where the ability of the Court to review an issue on appeal is in doubt, we may 'assume without deciding' that the issue can be reviewed provided that this permits us to resolve the appeal on the best and narrowest grounds." *McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018). Put simply, "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)); *see also Marlowe v. Sw. Va. Reg'l Jail Auth.*, 81 Va. App. 415, 424 n.5 (2024). The "best" ground is the one agreed upon by the largest number of jurists. *Butcher*, 298 Va. at 396. The "narrowest" ground is the one affecting the smallest number of cases. *Id.* We are convinced that addressing this appeal on the merits is the "best and narrowest" course.

We realize that the merits include a constitutional issue and recognize the general reluctance to rule on such issues. *See Harris v. Commonwealth*, 83 Va. App. 571, 580 n.2 (2025). But our holding is limited. It does not articulate a new constitutional rule, nor does it decide the constitutionality of an act of the General Assembly. Rather, we resolve a state-law claim that merely touches upon or applies constitutional law. Thus, judicial restraint favors resolving this appeal on narrow fact-based grounds rather than articulating a far-reaching interpretation of the statute of limitations that could affect many claims. *Cf. Thaler v. Perlmutter*, 130 F.4th 1039, 1051 (D.C. Cir. 2025) ("[T]he cardinal principle of judicial restraint [is that] if it is not necessary to decide more, it is necessary not to decide more[.]" (quoting *PDK Lab'ys Inc. v. U.S. Drug Enf't Agency*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring))).

*also Montalla, LLC v. Commonwealth*, 303 Va. 150, 163 (2024). "The purpose of a demurrer is to determine whether a [complaint] states a cause of action upon which the requested relief may be granted. A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 356-57 (2010) (citations omitted) (quoting *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 204 (2007)).

When a plea in bar depends on purely legal questions, including issues of statutory construction or constitutional law, this Court conducts de novo review. *Zeng v. Charles*, 82 Va. App. 326, 344 (2024) (quoting *Cornell v. Benedict*, 301 Va. 342, 349 (2022)); *Pegasystems Inc. v. Appian Corp.*, 81 Va. App. 433, 479 (2024). We defer to the trial court's factual findings unless "they are plainly wrong or without evidentiary support." *Zeng*, 82 Va. App. at 344 (quoting *Cornell*, 301 Va. at 349).

## II. Petrak's statements are non-actionable opinions.

"Virginia law allows a person who has been the subject of libel or slander to bring a cause of action for defamation." *Jackson v. Hartig*, 274 Va. 219, 227 (2007). This cause of action "has been viewed as the means to protect a basic right because 'the individual's right to personal security includes his uninterrupted entitlement to enjoyment of his reputation.'" *Jordan v. Kollman*, 269 Va. 569, 575 (2005) (quoting *The Gazette, Inc. v. Harris*, 229 Va. 1, 7 (1985)). But "the right to seek legal redress for another's defamatory statement is constrained by the protections of free speech established in the First Amendment to the United States Constitution and Article I, Section 12 of the Constitution of Virginia." *Jackson*, 274 Va. at 228 (citing *Yeagle v. Collegiate Times*, 255 Va. 293, 295 (1998)).

In Virginia, the elements of defamation are: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 480 (2013) (quoting *Jordan*, 269 Va. at 575). "To be actionable, the statement must be both false and defamatory."

- 6 -

*Jordan*, 269 Va. at 575 (citations omitted); *see also Episcopal Diocese of S. Va. v. Marshall*, 81 Va. App. 255, 273 (2024) ("Common-law defamation requires a statement that is provably false.").

Because opinions cannot be "objectively characterized as true or false," they are generally non-actionable. *Jordan*, 269 Va. at 576. And it "is firmly established that pure expressions of opinion are protected by both the First Amendment to the Federal Constitution and Article I, Section 12 of the Constitution of Virginia and, therefore, cannot form the basis of a defamation action." *Padula-Wilson v. Landry*, 298 Va. 565, 579 (2020) (quoting *Williams v. Garraghty*, 249 Va. 224, 233 (1995)). The central inquiry in any defamation action becomes whether the challenged statements are assertions of fact or protected opinions. Whether a statement is an actionable statement of fact or a non-actionable opinion is a matter of law for an appellate court to decide de novo. *Raytheon Tech. Servs. v. Hyland*, 273 Va. 292, 303-04 (2007).

The Supreme Court of Virginia summarized the general distinction between fact and opinion in *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132-33 (2003). In *Fuste*, the Court stated:

> Thus, speech which does not contain a provably false connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action.
>
> Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion.

*Id.* at 132 (citations and internal quotation marks omitted). When determining the nature of a statement, a court must also consider context. *See Lewis v. Kei*, 281 Va. 715, 725 (2011) ("In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement. Rather, a court must consider the statement as a whole." (quoting *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47 (2009))).

- 7 -

Petrak asserts that his comments constitute protected opinions because they are based upon and derived from fully disclosed facts. This Court agrees. Virginia caselaw and the Restatement (Second) of Torts make clear that the First Amendment protects statements of opinion based on disclosed or assumed non-defamatory facts. *Schaecher v. Bouffault*, 290 Va. 83, 105 (2015); Restatement (Second) of Torts § 566 cmt. c.[8]

This case resembles *Schaecher*, where the defendant, when discussing the plaintiff's special use permit application with fellow members of a planning commission, stated, "I firmly believe that [the plaintiff] is lying and manipulating facts to her benefit[.]" 290 Va. at 101. The Supreme Court of Virginia recognized that an accusation of lying may serve as the basis of a defamation action because it "has the requisite defamatory 'sting.'" *Id.* at 102. Rather than isolating the statement, the Court emphasized the surrounding context, noting that it "arose in a longer email from [defendant] to two Planning Commission members." *Id.* at 104. That email stated:

> Our application documents are in SERIOUS need of revision. This is the second time that [Schaecher] has effectively stated that you, Jesse, are not stating facts correctly (i.e. you are lying): you stated CLEARLY to the commissioners at our Sept. briefing meeting that [Schaecher] and her family were going to move to Clarke and live on the property, then [Schaecher] said no, not true, when questioned at the Sept. Friday meeting. She now says that what has been stated is "inconsistent" with "the purpose and nature of our project."

---

[8] The Supreme Court of Virginia has found the comments to Restatement (Second) of Torts § 566 instructive. *See Hyland*, 273 Va. at 303 (citing the Restatement (Second) of Torts § 566 cmt. a). Similarly, here, the Restatement provides persuasive guidance as it states that a "simple expression of opinion on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation no matter how unjustified and unreasonable the opinion may be or how derogatory it is." Restatement (Second) of Torts § 566 cmt. c. Therefore, if the defendant bases their opinion on non-defamatory disclosed facts, they are not liable for the factual statement or the opinion, so long as the comments do not reasonably indicate the existence of other undisclosed defamatory facts. *Id.* cmt. c, illus. 5(2).

*Id.* Bouffault immediately followed the email with the accusation that she "firmly believe[d] that [Schaecher] is lying and manipulating facts to her benefit." *Id.*

This Court emphasized that Schaecher did not plead that the statements underlying the email were false—in particular, the assertion that "there were inconsistencies between [Schaecher's] understanding of events and that of the Planning Commission." *Id.* at 105. It added that the "email appear[ed] to fully disclose the basis of Bouffault's rationale" and that the email's recipients were highly familiar with the situation. *Id.* Based on those considerations, the Court concluded that a reasonable person highly familiar with the situation and aware of the fully disclosed facts would perceive Bouffault's accusation as a pure opinion based on her subjective understanding of the underlying scenario. *Id.* at 106. Drawing on federal case law, the Court also found that "[a] statement of opinions on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning." *Id.* at 105 (quoting *Standing Comm. on Discipline of the United States Dist. Ct. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995)).

The *Schaecher* Court ultimately held Bouffault's statements non-actionable for three reasons: (1) the recipients' familiarity with the situation and the fully disclosed nature of the facts; (2) Schaecher's failure to "claim that the stated underlying facts themselves were false and defamatory"; and (3) because the email's recipients could have "reasonably conclude[d] that Bouffault's statement was purely her own subjective analysis." *Schaecher*, 290 Va. at 105-06.

The same dispositive reasons are present here. First, Petrak's Facebook post fully discloses the factual predicates underlying his opinions: Sawyers's Facebook comment calling the librarian "[s]uch a LILF," his tweet thanking Senator Al Franken, and the photograph of Al Franken groping a sleeping woman. Petrak lays out all the facts that form his opinion, and the

- 9 -

record shows that he relied on no unknown or undisclosed facts.[9] The alleged defamatory dispute involves Petrak's labeling of Sawyers as a sexual predator or harasser. Petrak's conclusion is explicitly based on the three disclosed facts, providing readers with the necessary context to evaluate his claims independently. As in *Schaecher*, the audience had the requisite information or knowledge of the factual basis for Petrak's conclusions to determine whether the accusations are perceived as pure opinion based on his subjective analysis.

Second, Petrak's opinion, drawn from these disclosed facts, cannot support liability in the absence of falsity in the underlying facts. Sawyers, like the plaintiff in *Schaecher*, did not allege that the underlying factual statements were false. Therefore, Petrak's post is a non-actionable opinion. Sawyers acknowledges making the LILF comment, that the images depict Al Franken's incident, and that he thanked Al Franken on Twitter. His testimony about the meaning of "LILF" offers an alternative interpretation. However, it does not challenge the factual existence of the comment or tweet. Nor does it claim that the underlying facts are defamatory. The dispute, therefore, lies only in Petrak's interpretation and assessment of the fully disclosed facts, which is non-actionable opinion.

---

[9] As in *Schaecher*, the record establishes that the readers of the Facebook post were aware of an underlying political dispute between the parties. Sawyers attached the entirety of Petrak's post as an exhibit to his complaint. The unredacted post begins with a disclosure that Petrak led an effort to gather signatures to recall Sawyers from his school board position. Petrak's post itself therefore provides the complete factual basis for his conclusion, including the political tension between the parties, eliminating any suggestion of undisclosed support. We note that, unlike *Schaecher*, the underlying political dispute or situation here is far removed from the content or topic of sexual misconduct or innuendos. However, this difference is not dispositive when there is no indication in the record that Petrak relied on undisclosed facts.

To the extent that Petrak and Sawyers were engaged in a broader political disagreement regarding education reform, that context alone also does not create a topically relevant undisclosed factual predicate. The post appeared in a Facebook group entitled "PWC Education Reform," where members could reasonably be expected to possess some knowledge of an underlying education reform dispute. In any event, Petrak's post discloses the full set of facts he relied on and, in itself, establishes the necessary familiarity with the situation for readers.

Third, a reader of the Facebook post, like the email recipients in *Schaecher*, could reasonably conclude that Petrak's comments characterizing Sawyers as a "SEXUAL PREDATOR/HARASSER" constituted his subjective analysis.[10]  Petrak guides the reader sequentially through each disclosed fact.  He signals the subjective nature of his reasoning with phrases like, "If that isn't the behavior of a SEXUAL PREDATOR/HARASSER, *I don't know what is*."  (Emphasis added).

Even the more provocative phrase, "Ryan Sawyers is an open serving SEXUAL PREDATOR/HARASSER," appears within a contextual narrative that ties directly back to the disclosed facts and is introduced by the word "So."  Viewed in isolation, that statement might be interpreted as factual.  In context, however, it forms part of a larger narrative expressing Petrak's personal assessment or interpretation of the disclosed facts.  The language leading into that phrase illustrates the point:

> The second picture is a tweet from Ryan Sawyers thanking Senator
> Al Franken, another SEXUAL PREDATOR for campaigning in
> Virginia.  The third picture is of Al Franken groping a sleeping
> woman . . . .  Can you see the connection here?  So our School
> Board Chairman-at-Large . . . is an open serving SEXUAL
> PREDATOR/HARASSER.

By presenting the two photographs and then using the word "So," Petrak appears to be drawing his opinion or inference directly from his perceived connection between the tweet and

---

[10] The record shows that readers of Petrak's post interpreted his comments and conclusions as his subjective personal opinion rather than literal statements of fact.  *See Fuste*, 265 Va. at 132 ("[S]tatements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action." (quoting *Yeagle*, 255 Va. at 295)).  Several responses to the post illustrate this perception: readers described Petrak's characterization of Sawyers as a sexual predator as a "stretch," cautioned against making light of the term, and noted that the underlying comments or images did not constitute evidence of predatory behavior.  These responses suggest that those readers did not believe the language carrying the alleged defamatory sting to be true but instead viewed it as Petrak's subjective assessment drawn from the disclosed facts.  This supports our conclusion that a reasonable reader could perceive Petrak's remarks as subjective commentary rather than independently verifiable factual assertions.

the pictures. By layering facts and reasoning in a step-by-step manner, as Petrak does throughout his post, he helps the reader understand the basis for his conclusion and reasonably perceive the post as Petrak's subjective analysis based on the facts he disclosed.

Accordingly, Petrak's comments, which are based on fully disclosed facts and reflect his subjective assessment, are non-actionable and protected by the First Amendment.[11]

### III. Virginia's Anti-SLAPP Statute

Petrak finally argues that the trial court erred in denying his plea in bar asserting statutory immunity under Code § 8.01-223.2, because "the jury found that those statements were made with actual malice." Virginia's anti-SLAPP statute grants immunity "from [civil] liability if the . . . claim is based solely on statements . . . regarding matters of public concern that would be protected under the First Amendment to the Constitution of the United States[.]" Code § 8.01-223.2(A)(i). Under the statute, a prevailing party covered by immunity "may recover reasonable attorney fees and costs." Code § 8.01-223.2(C). However, the immunity does not extend to statements that the "declarant knew or should have known were false or were made with reckless disregard for whether they were false." Code § 8.01-223.2(B). In short, if a statement is made with "actual malice," immunity cannot apply. *See id.*

The United States Supreme Court has defined actual malice as making a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Similarly, the Supreme Court of Virginia has explained that to prove actual malice, the plaintiff must show by clear and convincing evidence that the "defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Jordan*, 269 Va. at 577 (citation omitted). Both

---

[11] Nothing in our holding is intended to conclude that the phrase "sexual predator" can never be considered defamation per se. In another context, this phrase may constitute defamation, but that situation is not currently the one before this Court.

cases make clear that for actual malice to be present, the statement at issue must carry a provably false or factual meaning—not an expression of opinion. *See Sullivan*, 376 U.S. at 280; *Jordan*, 269 Va. at 577.

Because Petrak's statements are constitutionally protected opinion, the jury finding of actual malice cannot stand. As opinions, they are not "false" within the meaning of Code § 8.01-223.2(B). Additionally, as a matter of law, actual malice cannot be established when the statements convey no provably false or factual meaning, such as pure opinions based on fully disclosed facts. Since Petrak's expressions of opinion are protected under the First Amendment and both parties agree that these expressions regard matters of public concern, specifically Sawyers's fitness for public office, the immunity provided under Code § 8.01-223.2 applies.

The trial court thus erred in denying Petrak's plea in bar. On remand, the court should determine whether Petrak is entitled to reasonable attorney fees and costs under Code § 8.01-223.2(C).

## CONCLUSION

Petrak's statements are protected, non-actionable opinions based on fully disclosed facts. The trial court therefore erred in overruling Petrak's demurrer and plea in bar and allowing the defamation action to proceed to a jury trial.

Accordingly, we reverse the judgment and remand for the trial court to determine Petrak's entitlement to attorney fees.

*Reversed and remanded.*